**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Sandria D. Phillips, | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-cv-03125-CWH |
| | ) | |
| vs. | ) | |
| | ) | |
| Progressive Casualty Insurance Company, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on the defendant's motion for summary judgment. The plaintiff seeks to reform an insurance policy covering her motorcycle to include underinsured motorist ("UIM") coverage on grounds that she did not receive a meaningful offer of such coverage at the time of her application.

**I.    Plaintiff's Allegations**

On February 22, 2005, David Lucarelli ("Lucarelli"), an independent agent, issued Sandria D. Phillips (the "plaintiff" or the "insured") an insurance policy to cover her 1997 Kawasaki motorcycle. On March 18, 2006, the plaintiff was injured in an accident while riding her motorcycle. The plaintiff's motorcycle was insured under a policy issued by Progressive Casualty Insurance Company ("Progressive"). The application form, which was downloaded by Lucarelli from Progressive's website, was filled out by Lucarelli in the insured's presence and was visible to the insured as they discussed her personal information and coverage preferences. The insured signed a print-out of the completed form at various places. The policy lists liability and uninsured motorist ("UM") coverage limits of 15/30/10, meaning $15,000.00 per person,

$30,000.00 total per accident limits for bodily injury, and $10,000.00 per accident for property damage.  The default coverage limits that appear when an agent pulls up Progressive's on-line application form are higher than the minimum limits and have to be adjusted downward by the agent if the applicant wants lower limits.

The application included a page entitled "III.  Offer of underinsured motorist coverage," which contained a list of alternative coverage limits, including "$15,000/$30,000/$10,000," with a stated premium of $108.00.  The offer of UIM coverage contained the following question and response:

> Do you wish to purchase underinsured motorist coverage?
> Yes _____     No __X__

Immediately below the passage quoted above, the following line appears:

> If your answer is "no," then you must sign here.

The plaintiff's signature appears immediately below the aforementioned line.  Below the plaintiff's signature, the application states "If your answer is 'yes,' then specify the limits which you desire.  These limits cannot exceed your motor vehicle insurance liability limits."  Under that statement, there is a typed entry that states "REJECTED."

Lucarelli printed out the entire application template for the applicant's signature once he had entered her information.  The computer program would not permit Lucarelli to print anything less than the whole application form.  The completed printout included a section entitled "Offer of Optional Additional Uninsured Motorist Coverage and Optional Underinsured Motorist Coverage."  The following provisions were under the subheading "I.  Explanation of Coverages," beginning with the fourth paragraph on page 6:

> Underinsured motorist coverage compensates you, or other persons insured under your motor vehicle insurance policy, for amounts which you legally may be entitled to collect as damages from an owner or operator of an at-fault underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle which is covered by some form of liability insurance, but that liability insurance is not sufficient to fully compensate you for your damages.
>
> Your motor vehicle insurance policy does not automatically provide any underinsured motorist coverage. However, you have the right to buy underinsured motorist coverage in limits up to the limits of liability coverage which you will carry under your motor vehicle liability policy. Some of the more commonly-sold limits of underinsured motorist coverage, together with the additional premiums which you will be charged, have been printed by your insurance company upon this Form. If there are other limits in which you are interested, but which are not shown upon this Form, then fill in those limits in the blanks provided. If your insurance company is allowed to market those limits within this State, then your insurance agent will fill in the amounts of increased premium.
>
> It is important that you understand that, if you reject either one of these coverages upon this Form and if you are involved in an [sic] motor vehicle accident, then this Form may be used by your insurance company as evidence against you if it denies your claim for additional uninsured motorist coverage or underinsured motorist coverage.
> . . .
>
> In the future, if you wish to increase or decrease your limits either of additional uninsured motorist coverage or of underinsured motorist coverage, then you must then [sic] contact either your insurance agent or your insurance company.

The form refers the applicant to the South Carolina Department of Insurance for any further questions not answered by the agent or the insurer and lists the mailing address, phone number, and e-mail address of the Department's Office of Consumer Services. The plaintiff also signed a page entitled "Applicant's Acknowledgment, which states as follows:

> By my signature, I acknowledge that I have read–or have had read to me–the above explanations and offers of additional uninsured motorist coverage and underinsured motorist coverage. I have indicated whether or not I wish to purchase each coverage in the spaces provided. I understand that the above explanations of these coverages are intended only to be brief descriptions of additional uninsured motorist coverage and underinsured motorist coverage, and that payment of the benefits under either of these coverages is subject both to the terms and conditions of my motor vehicle coverage and to the State of South Carolina's laws.

The plaintiff does not deny signing or receiving these forms. She denies having read the forms, or if she did read them, having understood their meaning before signing them. The plaintiff also asserts that she did not notice the coverages and limits listed on the application paperwork or on the declarations pages she later received from Progressive when she received the policy in the mail the first time and again when it was renewed a year later.

**II.     Procedural History**

On July 30, 2007, the plaintiff brought this action against Progressive. On September 14, 2007, the defendant removed this action from the Court of Common Pleas, Dorchester County, South Carolina to the United States District Court for the District of South Carolina, Charleston Division. On April 29, 2008, the defendant moved for summary judgment. On May 15, 2008, the plaintiff responded in opposition to the motion for summary judgment. On May 23, 2008, the defendant replied to the plaintiff's response to the motion for summary judgment.

**III.    Standard for Deciding a Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Summary judgment is

proper only where the moving party is entitled to judgment as a matter of law, where it is clear what the truth is, and where no genuine issue remains for trial. Poller v. Columbia Broadcasting Sys., Inc., 368 U.S. 464 (1962).

## IV.     Meaningful Offer of Underinsured Motorist Coverage

Under South Carolina law, motorists are not required to purchase UIM coverage, but automobile insurance carriers must offer "at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage." S.C. Code § 38-77-160. Such an offer must be meaningful under the standards set forth in S.C. Code § 38-77-350 or the South Carolina Supreme Court's decision in State Farm Mut. Auto. Ins. Co. v. Wannamaker, 291 S.C. 518, 521 (1987). In order for an insurer to make a meaningful offer of UIM coverage, "(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage in general terms; (3) the insurer must intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium." Id.

Moreover, S.C. Code § 38-77-350 requires the South Carolina Department of Insurance to create a form for insurers to use in offering optional coverages, including UIM coverage. The statute states that "[t]he form, at a minimum, must provide for each optional coverage required to be offered:

> (1) a brief and concise explanation of coverage;
>
> (2) a list of available limits and the range of premiums for the limits;
>
> (3) a space to mark whether the insured chooses to accept or reject the coverage and a space to state the limits of coverage the insured desires;

>(4) a space for the insured to sign the form that acknowledges that the insured has been offered the optional coverages;
>
>(5) the mailing address and telephone number of the insurance department that the applicant may contact if the applicant has questions that the insurance agent is unable to answer.

In 2005, the statute provided that it was conclusively presumed that a meaningful offer had been made if the form was completed by the insured. In 2006, the statute was amended to extend the presumption in cases where the form "has been completed by an insurance producer or a representative of the insurer." S.C. Code § 38-77-350(B). "The sufficiency of the offer is a question of law for the court." Antley v. Nobel Ins. Co., 350 S.C. 621, 567 S.E.2d 872, 878 (S.C. Ct. App. 2002). If the insurer fails to make a meaningful offer of UIM, the court will reform the policy to include UIM up to the limits of liability coverage. Butler v. Unisun Ins. Co., 323 S.C. 402, 475 S.E.2d 758, 760 (1996).

In this case, the insurance agent, Lucarelli, entered the plaintiff's information onto the downloaded form before printing it out for the plaintiff to sign. Therefore, Progressive is not seeking the statutory presumption that a meaningful offer was made. Progressive's UIM offer form is substantially similar to the South Carolina Department of Insurance's Form 2006. The South Carolina Court of Appeals has held that the Form 2006 satisfies the statutory and common elements of a meaningful offer of UIM coverage. Clinton v. West Amer. Ins. Co., 364 S.C. 113, 611 S.E.2d 521 (S.C. Ct. App. 2005). Progressive's offer form satisfies both the requirements of the Wannamaker test and S.C. Code § 38-77-350 because: (1) the offer form contains a brief and concise explanation of the coverage under the subheading "I. Explanation of Coverages," beginning with the fourth paragraph on page 6; (2) page 9 has the "Offer of uninsured motorist

coverage" and lists the available UIM coverage limits and the range of premiums for the limits; (3) page 9 of the form provides a space for the insured to mark her acceptance or rejection of UIM coverage and a space to state the coverage limits desired; (4) page 10 provides signature space for the insured to acknowledge that she was offered optional UIM and additional UM coverages; and (5) page 7 states the required contact information for the Department of Insurance, with instructions for the insured to contact the agency with any remaining questions. The plaintiff was provided with adequate information to allow her to accept or reject the coverage. The plaintiff's assertion that she did not read or review the coverages upon receipt of the forms or at the time the coverage was renewed does not require the Court to reform the policy. Therefore, the application in question amounted to a meaningful offer of UIM coverage.

## V.     Conclusion

The defendant's motion for summary judgment is granted.


**AND IT IS SO ORDERED**.

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**


July 3, 2008
Charleston, South Carolina